18262

Mrs. Thelma P. BAILEY, Respondent, v. LYMAN PRINTING AND FINISHING COMPANY, Inc., Appellant, and Twelve Other Individuals as Plaintiffs in Separate Cases, Respondents, v. Lyman Printing and Finishing Company, Inc., Appellant.

(138 S. E. (2d) 410)

14

*Messrs. Means, Evins & Browne, Butler & Chapman* and *Odom, Nolen & Foster,* of Spartanburg, *for Appellant,*

16

*Messrs. Johnson & Smith,* of Spartanburg, *for Respondent,*

*Messrs. Means, Evins & Browne, Butler & Chapman* and *Odom, Nolen & Foster,* of Spartanburg, *for Appellant,* ■

October 12, 1964.

BRAILSFORD, Justice.

Thelma P. Bailey, and twelve other persons residing in the Startex Community of Spartanburg County, on the Middle Tyger River, about two miles downstream from the plant of Lyman Printing and Finishing Company, Inc., brought their separate actions against said company for injuries to their persons and property allegedly caused by deleterious gases which arose from the said river and permeated plaintiff's homes, on or about June 29 and 30 and during several days of early July, all in 1962. These gases were allegedly caused by inadequately treated waste discharged into said river by Lyman.

Lyman moved to strike certain allegations from the complaints, to make the complaints more definite and certain in one particular, for leave to take samples of paint from plaintiffs' residences, which paint, allegedly, was damaged by the gases from the river, and to require an election between allegedly inconsistent causes of action. Lyman, reserving its rights under its motions, filed answers, and, within twenty days, filed amended answers as of course; and, finally, moved for leave to amend its amended answers. The plaintiffs moved to strike certain allegations and certain entire defenses from Lyman's answers.

These motions were heard by the circuit court on the pleadings, and one order, applicable to all of the cases, was filed. This order denied all of Lyman's motions, except a part of its motion to amend its answer, and granted all of

plaintiffs' motions, except as to one of the defenses of the answer which the court refused to strike. Lyman, alone has appealed on thirteen exceptions. All of the cases have been consolidated for appeal on the record in the case in which Thelma P. Bailey is plaintiff. For convenience, we henceforth refer to Bailey as plaintiff and take no notice that multiple suits are involved.

The first exception charges error in the refusal of the court to strike from the complaint allegations that the waste discharged by Lyman so pollutes the river below its plant that the water will not support fish or other aquatic life and is unfit for use by any type of animal. The complaint does not allege that plaintiff is a riparian owner, nor any other facts showing that she has any rights or privileges with respect to the suitability of the waters of the river for aquatic life or for consumption by livestock which are not common to members of the public. Therefore, these allegations are irrelevant to her claim for private damages and should have been stricken.

The eighth exception charges error in striking from defendant's answer an allegation that plaintiff is not a riparian owner and has no rights in the waters of the river. It has become largely moot through our rulings on the first exception. Furthermore, if plaintiff had intended to claim any rights as a riparian owner, the burden would have been upon her to allege and prove that this was her status. Therefore, defendant's allegation that plaintiff was not such an owner was superfluous and we see no error in the order of the circuit court in this respect, certainly none prejudicial to defendant.

The second exception charges error in refusing to strike from the complaint allegations that if the conditions complained of are permitted to continue, plaintiff will be forced to give up her home and move, etc. The complaint limits the scope of this action to injuries inflicted "on or about the 29th and 30th of June and on

several days in the early part of July, 1962," thus preserving the right to sue by independent action for any subsequent injury. The action was not commenced until the expiration of almost six months after the occurrences complained of and there is no allegation that the conditions continued during this interval. If the atmosphere is again polluted to the extent that plaintiff's home becomes uninhabitable, plaintiff will have an election to bring a separate action for any actionable damages, or, if this action is still pending, to proceed by supplemental complaint. The allegation as to plaintiff's being forced to give up her home is based upon a continuation of conditions which, according to the complaint, terminated in early July, 1962. Such allegation is, therefore, irrelevant to this cause of action and should have been stricken.

The third exception charges error in refusing to strike from the complaint an allegation that by its conduct the defendant has "taken the private property of plaintiff and subjected it to the private use of defendant without plaintiff's consent."

Plaintiff's counsel concedes that this action is for damages for injury to property, rather than for a taking of property, but contends that the words in question should be construed, in the context of the complaint, to mean only a "partial and temporary taking on the occasions referred to." The plain, ordinary meaning of the words used is that defendant has taken plaintiff's property. This charge is irrelevant to, even inconsistent with, the cause of action set up in the complaint and is of an inflammatory nature. Therefore, this paragraph of the complant should have been stricken. When this is done, exception 13, charging error in refusing to require an election, becomes moot and need not be considered.

In the complaint, the dates on which the injuries are alleged to have occurred are preceded by the words, "(t)hat prior to but particularly on or about". The

fourth exception charges error in refusing to require that the words be made more definite and certain by specifying the dates of any such prior occasions. The circuit court found it unnecessary to grant this relief because counsel for plaintiff stated in open court that no damages were claimed for occurrences prior to the named dates, and that the reference to prior occasions related only to "guilty knowledge" of the defendant. For this reason, and for the further reason that the answer of the defendant expressly admits that there were gaseous emanations causing unpleasant odors in late June and early July "and also on occasions prior thereto," we find no error in the court's ruling.

As an element of damages, the complaint alleges that ▮ the gases arising from the river injured the paint on plaintiff's house. Defendant moved for an order allowing it to take samples of the paint for chemical analysis. The fifth exception charges error in the refusal of the court to grant this motion. We find no error as assigned.

In *Welsh v. Gibbons*, 211 S. C. 516, 46 S. E. (2d) 147, 175 A. L. R. 228, which involved a coca-cola allegedly containing a poisonous substance from which plaintiff drank a small portion, the circuit judge refused a motion to require plaintiff to deposit the bottle with the clerk of court, so that a chemical analysis of its contents could be made. The sole ground assigned for refusing the motion was that the court lacked the power to grant this relief. On appeal, the judgment of the circuit court was affirmed by this court. The defendant seeks to distinguish this case upon the ground that "the contents of the coca-cola bottle had been prepared and placed in the bottle by the defendant, while in the present case the defendant has had no contact, information or relationship to the paint." In the light of the following quotations from Welsh, which fairly state the rationale of the decision, we must conclude that the attempted distinction is unsound and that the circuit court properly overruled the motion.

" 'The remedy provided by the Code for taking testimony before a trial of the parties to the action, in behalf of the adverse party, is exclusive, and supersedes all remedies existing at the time of its adoption, as hereinbefore stated. * * *'

"There is no provision in our statutes authorizing the Court to require a party in a pending case to produce and permit his adversary to inspect an article or chattel in his possession or under his control. * * * The omission in these statutes of any reference to the power now under consideration is quite significant. That the lack of such power may, in certain cases, result in an injustice may be conceded. Cogent reasons may be advanced why such a power should be conferred upon the courts but we are here dealing only with the question of the power of the courts in the absence of any legislation. We reluctantly conclude that the courts do not have the inherent power to grant the relief now sought by appellant." 46 S. E. (2d) 149, 150.

The sixth exception charges error in striking from defendant's answer the allegation that defendant has expended large sums of money in the construction of facilities for pretreatment of its waste. We think that evidence of expenditures for these purposes has a tendency to refute the charge that the defendant acted willfully and wantonly, and that it is relevant to the question of punitive damages. Therefore, this allegation should not have been stricken.

The seventh exception charges error in striking from the sixth paragraph of the first defense of the answer an allegation that plaintiff knew that the defendant was "discharging its effluent into Middle Tyger River and of the other conditions prevailing in the community" when she purchased her home there "several years ago." This allegation is substantially repeated in the second defense of the answer, purporting to plead the defenses of estoppel and laches, which was stricken in its entirety. The ninth exception assigns this

as error and the two exceptions are argued together in the brief, to the sole point that the court erred in striking the affirmative defenses of estoppel and laches.

The motion to strike the second defense as not constituting a defense, and, therefore, irrelevant, is in the nature of a demurrer and tests the legal sufficiency of the plea to establish a defense to the action. *Lancaster v. Sweat,* 239 S. C. 120, 121 S. E. (2d) 444, and authorities therein cited. The allegations of this defense may be fairly summarized as follows:

The plaintiff has resided in the Startex community for "many years." She had full knowledge of the situation with respect to gases or odors arising from Middle Tyger River and of their effect on living conditions in the community when she bought her "present home several years ago."

Plaintiff, with such knowledge, "has permitted defendant * * * to expend many millions of dollars in the construction and development of its dyeing, finishing and printing facilities at Lyman * * * and, having failed to make timely complaint or take legal action with regard to the conditions of which (s)he now complains, (s)he is estopped from so doing."

That plaintiff, by her "inaction over a period of many years," has been guilty of laches and may not maintain this action.

The defenses of laches and estoppel both involve, as ■■ essential elements thereof, some showing of material prejudice to the party asserting the defense from the act or neglect of the party against whom it is asserted. "Delay alone in the assertion of a right does not constitute laches. It must be shown in addition that such delay has resulted in material prejudice to the defendant." *Grossman v. Grossman,* 242 S. C. 298, 309, 130 S. E. (2d) 850, 855. The elements of equitable estoppel are thus stated in *In re Estate of O. B. Nettles,* 231 S. C. 214, 218, 97 S. E. (2d) 897, 899:

"(1) lack, on the part of the one claiming estoppel, of knowledge and the means of knowledge of the truth as to the facts and circumstances upon which the claim of estoppel is predicated; (2) conduct, representations or silence of the party estopped, amounting to misrepresentation or concealment of facts; (3) reliance upon such conduct, representations or silence; and (4) resulting action, to his detriment, by the party claiming the estoppel."

The defense was properly stricken because no facts were alleged from which an inference might be drawn that any wrongful act, neglect or delay of the plaintiff resulted in any prejudice to the defendant. The allegation that plaintiff *permitted* the defendant and its predecessors to spend millions of dollars in the construction of its plant is a rather fanciful conclusion, wholly unsupported by any facts alleged in the second defense or otherwise appearing in the record. On the contrary, it appears that the plant had been constructed and was in operation long before plaintiff purchased her home. Neither before nor after this purchase would she have owed any duty or had any right to protest the construction or improvement of defendant's plant or the installation of any facility connected with it. The action was brought promptly after the infliction of the injuries complained of. The facts alleged would not have supported the defense of estoppel or of laches and were, therefore, irrelevant and properly stricken.

Our disposition of exceptions seven and nine makes it unnecessary to consider exception 12, which charges error in refusing to allow amendments to a portion of paragraph 6 and to the second defense, both of which have been stricken.

The tenth exception charges error in striking the fourth defense of defendant's answer, quoting from the exception, "setting forth that the Court in passing upon injunctive relief should consider the respective rights of the parties and the advantages and benefits to the public generally; the error being that where equitable relief is sought such a de-

fense is proper and material and the Court should consider the effects of drastic injunctive relief and ensuing results."

The meat of the allegations of the so-called fourth defense is simply that the continued operation of defendant's plant is of economic benefit to the public generally, and "thousands of people" would suffer economic detriment "if a burden should be placed upon the defendant which would seriously affect it in the operation of its plant and facilities." Therefore, these benefits and detriments should be considered by the court in framing any injunctive order.

We find no error as assigned in striking these allegations which, quite clearly, do not set forth any facts constituting a defense to the action. The discretion of the chancellor is always involved in framing and issuing an injunctive decree, and he must necessarily consider economic factors in the judicious exercise of it. No such exhortation in the pleadings is necessary to invoke this discretion, nor will the chancellor be impeded in the exercise of it by the fact that these allegations were stricken from the answer, as defendant, apparently, assumes. Decision of this issue does not require an examination of the authorities which defendant has been granted permission to criticize.

The eleventh exception charges error in striking the second and fourth defenses and is overruled for the reasons stated in disposing of exceptions nine and ten.

This disposes of all questions raised by the principal appeal. The defendant has also appealed from the order settling the case for appeal. The issues raised have been substantially resolved against it by our disposition of the fifth exception, and we overrule these exceptions without further discussion.

Modified and remanded for further proceedings in conformity herewith.

TAYLOR, C. J., and MOSS, LEWIS and BUSSEY, JJ., concur.